UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AKEEM SAMUELS,

       Plaintiff,

  v.

ALEJANDRO MAYORKAS, *the Honorable, in his official capacity for the Department of Homeland Security*,

       Defendant.

Civil Action No. 22-cv-1249 (TSC)

**MEMORANDUM OPINION**

Plaintiff Akeem Samuels brings this action under Section 501 of the Rehabilitation Act against his former employer Alejandro Mayorkas in his official capacity as Secretary of the Department of Homeland Security ("DHS"). ECF No. 7, Am. Compl. Defendant has moved to dismiss for failure to state a claim. ECF No. 10. For the reasons below, the court will GRANT Defendant's motion, ECF No. 10. However, the court will dismiss Plaintiff's complaint without prejudice to give him the opportunity to make additional allegations to support his claims.

    **I.**    **BACKGROUND**

Samuels claims that DHS discriminated against him on the basis of a perceived mental impairment. According to the Amended Complaint, Samuels worked in the Office of Countering Weapons of Mass Destruction as a Supervisory Management Program Analyst under the supervision of Coanne Glaze. ECF No. 7, Am. Compl. ¶¶ 1-3. Samuels claims Glaze was condescending, dismissive, and used a demeaning tone with him. *Id.* ¶ 7. In May 2021, Glaze gave Samuels a performance review in which she noted that "it was imperative that [his]

technical competencies be addressed immediately." *Id*. ¶ 11.  Glaze also wrote that she would enroll Samuels in training for "emotional intelligence and critical thinking." *Id*.

Samuels alleges that about a week later, Glaze and Samuels were in a meeting with another colleague, when

> Ms. Glaze started the meeting with a vague question about why Mr. Samuels had sent an email.  Mr. Samuels was confused about what email Ms. Glaze was referring to as it had not been identified.  Ms. Glaze firmly and angrily stated that Mr. Samuels needed to use his "Human Capital Brain."  Mr. Samuels told Ms. Glaze that the comment was offensive and that he was not stupid.  Ms. Glaze abruptly hung up the phone.  Mr. Samuels continued the meeting with the other participant, who repeatedly defended or downplayed Ms. Glaze's comment.

*Id.* ¶ 12.

After the meeting, Samuels contacted a colleague, Anthony Antognoli, and shared that he had a family history of Alzheimer's Disease.  *Id*. ¶ 13.  Several days later, in early June, Glaze emailed a letter to Samuels informing him that he was being reassigned in a manner that Samuels alleges was effectively a demotion.  *Id*. ¶ 14.  Samuels filed an informal charge of disability discrimination with an Equal Employment Opportunity ("EEO") Counselor shortly thereafter. *Id.* ¶ 18.  Samuels also filed a formal charge with the DHS EEO office in September, which was accepted on in November 2021.  *Id*. ¶¶ 19-20.

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6).  A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In evaluating a Rule 12(b)(6) motion, the court determines whether there is "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 675, 678 (2009). Although a complaint does not need "detailed factual allegations" to survive a Rule 12(b)(6) motion, a plaintiff is required to provide more than "mere conclusory statements," *Iqbal*, 556 U.S. at 678, and a "formulaic recitation of a cause of action's elements," *Twombly*, 550 U.S. at 555. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

### III.   ANALYSIS

Section 501 of the Rehabilitation Act prohibits federal agencies from engaging in employment discrimination against disabled individuals. 29 U.S.C. § 791(f). The Rehabilitation Act relies on similar standards as the Americans with Disabilities Act of 1990 ("ADA"). *Taylor v. Rice*, 451 F.3d 898, 905 (D.C. Cir. 2006). Under the ADA, an individual with a disability: (1) "has a physical or mental impairment which substantially limits one or more . . . major life activities," (2) "has a record of such an impairment," or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B); 29 C.F.R. § 1630.2(g).

A plaintiff alleging discrimination under the "regarded as" prong must establish that they have been "subjected to [discrimination] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Samuels claims that his DHS supervisor regarded him as having a disability and demoted him because of it. *See* Am. Compl. ¶¶ 24-25. Even construing the Complaint in favor of Samuels, the allegations do not plausibly support that inference.

Samuels alleges only one fact to support the inference that Glaze regarded him as having a disability: that she told him to use his "Human Capital Brain" during a meeting. Am. Compl. ¶ 12. Even assuming that Glaze meant the comment as an insult, however, it does not on its face suggest a perception of disability. The remark could easily be construed as telling Samuels— however rudely—to pay attention and concentrate on answering Glaze's question about a Human

Capital-related email that he had sent. *Id.*; *see Twombly*, 550 U.S. at 567 (noting an "obvious alternative explanation" that undermined the plausibility of a claim). An isolated, ambiguous comment like Glaze's cannot alone bear the weight of Samuel's legal theory. *See Douglas v. D.C. Hous. Auth.*, 981 F. Supp. 2d 78, 88 (D.D.C. 2013) (concluding that a supervisor asking whether the plaintiff had recently seen a mental health professional because a medical condition might be triggering the plaintiff's conduct was insufficient to establish that the supervisor regarded the plaintiff as having a disability).

The Complaint is devoid of any other alleged comments, actions, or patterns that would suggest that Samuels was perceived to have had a mental impairment. In *Ingram v. D.C. Child & Family Services Agency*, for example, the plaintiff alleged that her employer not only told her that she was "acting paranoid," but also made it "appear to others in the organization that [she] was no longer able to make sound clinical decisions due to her anxiety," mocked her to upper management, and accused her of harassing her colleagues. 394 F. Supp. 3d 119, 127 (D.D.C. 2019. No such allegations are present here. Samuels does allege that he told his colleague Antognoli about his family history of Alzheimer's Disease, but he only disclosed that information *after* his contentious meeting with Glaze. Am. Compl. ¶ 13. In fact, there is no indication that Glaze ever knew of Samuels's family history of Alzheimer's. As a result, this allegation does not lend any support to the notion that Glaze regarded Samuels has having a mental impairment.

The deficient allegations of Samuels's perceived mental impairment alone warrant dismissal, but the court also notes the dubious causal connection between those allegations and his alleged demotion. Here, too, the Complaint fails to allege anything to indicate that Samuels's reassignment was based on his perceived disability, except perhaps the demotion's temporal

proximity to Glaze's "Human Capital Brain" comment. But as discussed above, that comment alone does not indicate perceived disability. Moreover, the Complaint alleges other facts that would explain nondiscriminatory reasons for his demotion. Samuels's May 2021 performance review found that his "technical competencies" as well as his "emotional intelligence and critical thinking" were unsatisfactory. Am. Compl. ¶ 11. *See Lewis v. Exelon Corp.*, No. 21-CV-3299, 2022 WL 1556329, at *2 (D.D.C. May 17, 2022) (concluding that because plaintiff took medical leave for his asthma multiple times, was criticized for his work performance, and failed to "explicitly" claim that his employer knew of his alleged disability, the facts did not support a causal inference that the plaintiff was terminated due to his disability); *Sledge v. D.C.*, 63 F. Supp. 3d 1, 17 (D.D.C. 2014) (determining that plaintiff's absences, lack of knowledge about his assignments, and failure to complete tasks assigned to him constituted "legitimate, non-discriminatory reason[s]" for his demotion).

In short, Samuels fails to allege sufficient facts to make a plausible claim that he was demoted because he was perceived to have a mental impairment. *Iqbal*, 556 U.S. at 675, 678. However, it is conceivable that he could allege additional facts that would render his claim plausible. "A dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (emphasis in original) (internal quotation marks omitted); *see, e.g.*, *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 282 (D.D.C. 2017) (dismissing the complaint without prejudice and granting the plaintiff leave to amend the complaint because he had "not alleged any facts that might support an inference" of Age Discrimination in Employment Act of 1967 violations). As a result, the court will dismiss the complaint without prejudice.

## IV.    CONCLUSION

For these reasons, the court will GRANT Defendant's Motion to Dismiss, ECF No. 10, and DISMISS Plaintiff's Amended Complaint, ECF No. 7, without prejudice.

Date: November 30, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge